**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
**YOUNG OK KIM,**

<table>
<tr><td style="text-align:center">Plaintiff,</td><td>REPORT AND<br>RECOMMENDATION</td></tr>
<tr><td style="text-align:center">-against-</td><td></td></tr>
<tr><td></td><td>20-CV-906 (ENV)</td></tr>
</table>

**FAMILY BOB INC., FAMILY BOB CORP.,**
**and JIHAN RYU,**

                           **Defendants.**
------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In this wage-and-hour action, plaintiff Young Ok Kim ("plaintiff") sues her former employers, defendants Family Bob Inc., Family Bob Corp. and Jihan Ryu (collectively, "defendants"), to recover for deficiencies in the wages she was paid and for related damages. See generally Complaint (Feb. 19, 2020) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1. Currently pending before this Court, on referral from the Honorable Eric N. Vitaliano, is plaintiff's motion of default judgment. See Motion for Default Judgment (Aug. 4, 2020) ("Pl. Mot."), DE #14; Order Referring Motion (Aug. 7, 2020) ("8/7/20 Order").

For the reasons that follow, this Court recommends that default judgment be entered against all defendants, jointly and severally, in the amount of $69,722.32 (plus interest), consisting of $24,359.66 in unpaid overtime wages, $24,359.66 in liquidated damages, $2,834 for tools of the trade, $10,000 in statutory damages, $7,270 in attorneys' fees, and $899 in costs.

## BACKGROUND

### I.     Factual Background

The facts described herein are mostly drawn from the allegations contained in plaintiff's Complaint, which she expanded upon (and to some extent contradicted) at an evidentiary hearing

held before this Court.  See Compl.; Minute Entry (Oct. 23, 2020), DE #18.[1]  Defendants are

Family Bob Inc. (a New York business organization, hereinafter "NY Family Bob"); Family Bob

Corp. (a New Jersey business organization, hereinafter "NJ Family Bob"); and Jihan Ryu, an

individual who owns stock and manages both entities.  See Compl. ¶¶ 12-19.  Defendants

employed plaintiff, an individual residing in Queens, New York, at their catering restaurants

from March 2018 until February 2020.  See Compl. ¶¶ 7,8, 28; see also Plaintiff's 2019 W2

("W2") (Oct. 30, 2020), DE #19-1.  Throughout plaintiff's employment, defendants failed to

keep accurate time records or provide her with pay stubs.  See Compl. ¶¶ 36-37, 70; Transcript

of Civil Cause for Evidentiary Hearing (Oct. 23, 2020) ("Tr.") at 25, DE #21; Affidavit of Young

Ok Kim in Support of Motion for Default Judgment (Aug. 4, 2020) ("Pl. Aff.") ¶¶ 19, 20, DE

#14-4.

    Plaintiff's Complaint seeks damages from defendants for their failure to provide plaintiff

with: overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

("FLSA"), and the New York Labor Law § 650 et seq. ("NYLL"); pay under New York's

spread-of-hours provision, see N.Y. Comp. Codes R. & Regs. tit.12, § 142-2.4; a wage notice at

the time of hire and detailed paystub information on paydays, under the NYLL Wage Theft

Prevention Act ("WTPA"), see N.Y. Lab. Law §§ 195(1)(a), 195(3); and reimbursement under

the FLSA for plaintiff's expenses in connection with the use of her own tools of the trade, see 29

C.F.R. § 531.35.

    Plaintiff's employment with defendants for approximately two years can be divided into a

series of distinct phases, based on differences in her schedule, place of work, responsibilities, and

payment.  From early May 2018 through February 2019 ("Phase I"), plaintiff worked as a

---

[1]Subsequent sections of this opinion address the legal implications of the material inconsistencies in the assertions contained in plaintiff's pleading, testimony and other submissions.

kitchen helper in defendants' New York restaurant.  See Compl. ¶ 28; Tr. at 5; Damages

Calculations (Aug. 4, 2020) ("Pl. Calc.") at 1-2, DE #14-8.  Although the parties had agreed that

plaintiff would be working 52 hours per week for a weekly salary, see Tr. at 18, thereafter,

during Phase I, plaintiff worked six days per week, totaling about 56 hours per week: from

Monday to Friday she worked ten hours per day, and on Saturdays she worked six hours per day,

see Compl. ¶ 29; see also Pl. Calc. at 1-2; Pl. Aff. ¶ 4.[2]  Regardless of the number of hours

plaintiff worked during Phase I, defendants paid her $650 in cash for the first two months of her

employment ("Phase I(A)"), and then approximately $800 per week ("Phase I(B)"), with 30

percent paid by check and 70 percent of the total amount paid in cash.  See Tr. at 18-19; see also

Compl. ¶¶ 30-31; Pl. Aff. ¶ 13. [3]

From March 2019 through November 2019 ("Phase II"), plaintiff worked a different

schedule and had additional responsibilities in connection with defendants' New Jersey

restaurant.  At the behest of defendants, plaintiff used her personal vehicle to shop for groceries

for the business and pick up co-workers on her way to work.  See Compl. ¶ 41; Pl. Aff. ¶¶ 9-10;

Tr. at 25.  Plaintiff worked six days per week, for approximately 63.5 hours per week, including

one hour between 4:30 a.m. and 5:30 a.m. on weekdays, when she shopped for groceries and

picked up co-workers: from Monday to Friday, plaintiff worked about 11.5 hours per day (from

---

[2]The Complaint and plaintiff's Damages Calculations describe a 56-hour per week schedule, see Compl.  ¶ 29; Pl. Calc. at 1-2, but, in an apparent error, the pleading references a 46-hour workweek, see Compl. ¶ 29.  The Court is entitled to correct this calculation error.  See, e.g., Chan v. Xifu Food, Inc., 18 CV 5445 (ARR) (RML), 2020 WL 5027861, at *6 n.5 (E.D.N.Y. Aug. 5, 2020).  On the other hand, because a plaintiff's recovery on a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings[,]" Fed. R. Civ. P. 54(c), the Court will not rely on plaintiff's hearing testimony wherein she claimed to have worked at least 57 hours per week during Phase I, see Tr. at 5.

[3] Plaintiff's testimony at the evidentiary hearing differed from her pleading and affidavit, which alleged that her salary was $800 from the start.  See Compl.  ¶¶ 31, 45; Pl. Aff. ¶ 13.

4:30 a.m. to 4:00 p.m.),[4] and on Saturdays she worked 6.0 hours per day.[5]  Compl. ¶ 39; Pl. Aff. ¶ 10.  On at least three occasions during this period, plaintiff worked on Sundays at the New York location for shifts of approximately 3.0 hours.  See Compl ¶ 39; see also Pl. Aff. ¶ 10.  During Phase II, defendants continued to pay plaintiff the same $800 weekly wage in the same 70/30 proportion in cash and check, see Compl. ¶ 45; Pl. Aff. ¶ 13; Pl. Calc. at 3; Tr. at 12-13, and provided her with an EZ-Pass and "some money" for gas, see Tr. at 26; see also id. at 10; Compl. ¶ 41; Pl. Calc. at 5.

From December 1, 2019 to December 22, 2019 ("Phase III(A)"), plaintiff had weekends off and worked five days per week, 11.5 hours per day, Monday through Friday, from 4:30 a.m. until 4:00 p.m. (again, spending the first hour shopping for groceries for the business and picking up co-workers), see Compl. ¶ 40, totaling 57.5 hours per week.[6]  During Phase III(A), defendant paid plaintiff $700 per week, see Compl. ¶ 46; Pl. Aff. ¶ 14; Pl. Calc. at 3; Tr. at 13, and (from November 1, 2019) paid her $40 per week for her use of her car, see Compl. ¶ 41; Pl. Aff. ¶ 12; Tr. at 28.

From December 23, 2019 until February 10, 2020 ("Phase III(B)"), plaintiff continued to work at the New Jersey restaurant, with the same Phase III(A) schedule and responsibilities.  See Compl. ¶ 40; Tr. at 10-11.  Defendants continued to pay her $40 per week for gas, see Comp. ¶ 41; Pl. Aff. ¶ 12; Pl. Calc. at 5; Tr. at 22, but failed to pay her any wage, see Compl. ¶ 47; see

---

[4] Plaintiff's hearing testimony provided a longer schedule, from 4:30 a.m. until 6:00 p.m. on weekdays.  See Tr. at 6.

[5] The Complaint and plaintiff's Damages Calculations erroneously assume that plaintiff worked 68.5 hours each week during Phase II, see Compl. ¶ 39, Pl. Calc. at 2-3; in fact, the hours add up to 63.5, except for at least 3 weeks during this period that she worked 3.0 hours on Sunday, see Compl. ¶ 39, bringing the weekly total to 66.5.  These are the numbers used in the Court's calculations.

[6] Again, the Complaint and plaintiff's Damages Calculations erroneously state that plaintiff worked 62.5 hours per week during this period, but the schedule detailed in the pleading adds up to 57.5 hours (11.5 hours x 5 days), which is the figure that the Court uses in calculating plaintiff's damages.

<u>also</u> Pl. Aff. ¶ 15; Pl. Calc. at 4-5; Tr. at 22.[7]  After several weeks of unpaid wages, plaintiff left

defendants' employment on February 10, 2020.  <u>See</u> Compl. ¶ 47.

## II.      Procedural History

Plaintiff filed the instant Complaint on February 19, 2020, <u>see generally</u> Compl., and

filed multiple affidavits of service with the Court, indicating that each of the three defendants

had been served, <u>see</u> Summons Returned Executed for Family Bob Corp. (Mar. 16, 2020), DE

#10; Summons Returned Executed for Jihan Ryu (Mar. 16, 2020), DE #10; Summons Returned

Executed for Family Bob Inc. (Apr. 2, 2020), DE #11.  After defendants failed to answer or

otherwise appear, plaintiff sought a certificate of default pursuant to Rule 55(a) of the Federal

Rules of Civil Procedure, <u>see</u> Request for Certificate of Default (Jun. 4, 2020), DE #12, and on

June 12, 2020, the Clerk of the Court entered a notation of default as to each defendant, <u>see</u>

Clerk's Entry of Default (June 12, 2019), DE #13.

After plaintiff moved for default judgment, <u>see generally</u> Pl. Mot.; Supporting

Memorandum (Aug. 4, 2020) ("Pl. Mem."), DE #14-1; Pl. Aff., Judge Vitaliano referred the

motion to the undersigned magistrate judge, <u>see</u> 8/7/20 Order.  On August 26, 2020, this Court

issued a scheduling order directing defendants to respond and requiring plaintiff's counsel to

serve copies of the order.  <u>See</u> Scheduling Order (Aug. 26, 2020), DE #16.  This Court held an

evidentiary inquest hearing, by videoconference, on October 23, 2020; defendants failed to

participate.  <u>See</u> Minute Entry (Oct. 23, 2020), DE #18.  Following the hearing, the Court

requested and plaintiff filed a supplemental brief and materials.  <u>See</u> Plaintiff's Brief (Oct. 30,

---

[7] The Complaint does not include a cause of action for failure to pay any wages or, for the matter, minimum wages.
<u>See</u> <i>infra</i> p. 15.

2020), DE #19; W2.  To date, defendants have not responded or otherwise appeared in this action.

## DISCUSSION

I.    **Default Judgment Standard**

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.  See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b).  A defendant's default ordinarily constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).

This principle is, however, subject to several exceptions and limitations.  First, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465(RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").  Nor will a complaint's factual allegations be considered "well-pleaded" where they are "contrary to the uncontroverted material in the file of the case[.]"  Chuchuca v. Creative Customs Cabinets Inc., No. 13-CV-2506 (RLM), 2014 WL 6674583, at *5 (E.D.N.Y. Nov. 25, 2014) (quoting Trans World Airlines v. Hughes, 449 F.2d 51,

63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973)); see Getty Images (US) Inc. v. Advernet, Inc., 797 F.Supp.2d 399, 439 (S.D.N.Y. 2011).  Moreover, the damages amount pleaded by a plaintiff is not deemed to be established by the default; the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).  It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether to hold an evidentiary hearing.  See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).  Finally, as discussed at various points of this opinion, the relief requested may not exceed "what is specified in the [complaint's] 'demand for judgment.'"  Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007).

## II.     Liability

### A.     The Fair Labor Standards Act — Legal Principles

#### 1.     Employer/Employee Relationship

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work").  An employee may bring suit against her employer where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise

7

engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an

annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

An employee may simultaneously have multiple "employers" for purposes of

determining responsibility under the FLSA.  Indeed, the regulations promulgated by the United

States Department of Labor under the FLSA recognize that there may be joint liability for FLSA

violations.  See 29 C.F.R. § 791.2; see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d

Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).  In

order to determine whether an employer-employee relationship exists for FLSA purposes, courts

have adopted an "economic realities" test, "grounded in 'economic reality rather than technical

concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of

the whole activity.'"  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d

Cir. 2008) (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961); Rutherford

Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

The Second Circuit has identified four factors that a court should address in applying, on

a case-by-case basis, the economic realities test when determining employer status: "whether the

alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records."  Carter v. Dutchess Cmty. Coll., 735 F.2d 8,

12 (2d Cir. 1984) (internal quotations and citations omitted).  Even in the absence of "formal

control," an entity or individual may constitute an "employer" if that party had "functional

control" of the employee.  See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 526

(S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72), vacated and remanded on other grounds, 811

F.3d 528 (2d Cir. 2016).  In accordance with these principles, "a corporate officer with

8

operational control of a corporation's covered enterprise is an employer along with the corporation . . . ." Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (quotation and citation omitted); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Consequently, joint employers, including corporate officers with the "power to control," may be held jointly and severally liable for FLSA violations. See Moon, 248 F.Supp.2d at 236-37 (citations omitted).

### 2. Violations of the FLSA

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). In order to establish liability under the FLSA for unpaid overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)). Employers that violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Under FLSA regulations, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work[,]" 29 C.F.R. § 531.35, the employee is entitled to credit for

the expenses of these tools of the trade; this aspect of the FLSA is violated if the cost of such tools cuts into an employee's minimum wage or overtime wages in any workweek, see id.

**B.**      **New York Labor Law – Legal Principles**

The NYLL is similar to the FLSA in that it requires employers to pay overtime compensation.  See N.Y. Lab. Law § 650 *et seq.*; Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all respects.").  Like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."  See Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (citation omitted).  One area in which the NYLL differs from FLSA is the NYLL's requirement, pursuant to several regulations, that an employer pay employees a "spread-of-hours" premium that is equal to "one hour of pay at the statutory minimum wage for each day an employee works in excess of ten hours."   N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6; see id. § 142-2.4.  Pursuant to one such regulation, section 142-2.4, and consistent with a 2006 opinion letter issued by the New York State Department of Labor, employees who earn in excess of the minimum wage ordinarily are not entitled to spread-of-hours compensation.  See Singh v. Patel, No. 12-CV-3204 (SJF)(ETB), 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013). However, pursuant to a NYLL regulation that governs the hospitality industry, including restaurants, the "spread of hours" mandate applies to "all employees in restaurants . . . , regardless of a given employee's regular rate of pay."  Id. § 146-1.6(d).

Unlike the FLSA, the NYLL's WTPA requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . . ; the name

of the employer; . . . [and] the regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195.1(a). Moreover, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y. Lab. Law § 195(3).

### C. Liability in This Case

Having set forth the relevant legal standards under the FLSA and NYLL, the Court now considers whether the factual allegations asserted in plaintiff's Complaint are sufficient to warrant a finding of liability against each defendant. See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.

### 1. The Applicability of the NYLL

As a preliminary matter, the Court must first address an issue initially overlooked by plaintiff: whether and to what extent the NYLL applies to Phases II and III of plaintiff's employment, that is, the period from "March 1, 2019 to February 10, 2020, [when] Plaintiff was transferred [from the NY Family Bob location] to Defendants' other catering restaurant, NJ Family Bob, located at 148 Main Street, Little Ferry, NJ 07643[.]" Compl. ¶ 38. Having considered the circumstances of this case, the Court concludes that the NYLL only covers the period of plaintiff's employment in which she primarily worked in New York. See Drozd v. U.S.A. Concepts of New York Corp., No. 09-CV-5120 (RER), 2015 WL 13733713, at *11-12 (E.D.N.Y. Apr. 23, 2015).

The NYLL generally does not have extraterritorial reach. See, e.g., O'Neill v. Mermaid Touring Inc., 968 F.Supp.2d 572, 578-79 (S.D.N.Y. 2013) (granting defendant summary

11

judgment "to the extent that Plaintiff seeks recovery under the New York Labor Law for overtime work performed outside of New York").  Claims arising under the NYLL concern conduct regulation and, where the work occurs in more than one state, a New York choice-of-law analysis is appropriate to determine whether New York is the jurisdiction with the greater interest in the dispute, such that New York law applies.  See Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521-23 (1994); see also Pierre v. GTS Holdings, Inc., No. 15 Civ. 143 (PAC), 2015 WL 7736552, at *2-3 (S.D.N.Y. Nov. 30, 2015).

In this case, although plaintiff resided in New York and defendants operated a catering business in New York, almost all of  plaintiff's working hours were spent in New Jersey after she was transferred to the New Jersey location in March 2019; from this point on, her work assignment in New York (such as grocery shopping and picking up co-workers) were largely incidental to her work in New Jersey.  Cf. Pierre, 2015 WL 7736552, at *4 (applying New York law where the majority of plaintiff's chauffeured rides were conducted in New York and employer conducted substantial business in that state).  New Jersey thus had a greater interest in plaintiff's employment during Phases II and III and, in accordance with the approach followed in Drozd, 2015 WL 13733713, at *12, plaintiff has not stated claims under the NYLL for those periods of her employment.[8]  See Aminov v. EC Commodities Corp., 16-cv-4800 (AMD) (SMG), 2017 WL 9511075, at *3 (E.D.N.Y. July 6, 2017) (although defendant company "had an office in New York and plaintiff resided in New York, the NYLL did not apply" to "claims for wages and overtime based on labor performed outside of New York State") (collecting cases), adopted, 2018 5442245 (E.D.N.Y. Jan. 24, 2018).

---

[8] The Complaint does not assert any claims under New Jersey law.

### 2.    Plaintiff's Employee Status

Plaintiff has sufficiently pled that she was defendants' employee within the meaning of the FLSA and NYLL.  See generally Compl. ¶¶ 21, 23, 28, 38.  "The overtime provisions of the FLSA and New York Labor Law apply only to individuals who are 'employees.'"  Schwind v. EW & Assocs., Inc., 357 F.Supp.2d 691, 700 (S.D.N.Y. 2005).  Courts in this District have found that a plaintiff who "provides information in the complaint as to where he worked, his position[,] and the dates of his employment" has sufficiently alleged employee status in the context of a default judgment motion.  Suggs v. Crosslands Transp., Inc., No. 13-CV-6731 (ARR)(MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 27, 2015).  Here, because plaintiff averred that she was employed by defendants as a kitchen helper from May 10, 2018 to February 10, 2020, tasked with answering phone calls and text messages as well as preparing food items, see Compl. ¶ 29, and, after her transfer to New Jersey, shopping for and delivering groceries and picking up employees, see Compl. ¶ 38, she has sufficiently pled her employee status.

### 3.    Defendants' Employer Status

Plaintiff has sufficiently alleged that defendants were her employers for the purposes of the FLSA and NYLL.[9]  See generally Compl. ¶¶ 17-19, 32, 34.  Plaintiff established that the corporate defendants owned and operated the two catering restaurant locations where plaintiff worked.  See Compl. ¶¶ 8-18, 20-22.  With respect to defendant Ryu, plaintiff's Complaint

---

[9] Plaintiff brings her FLSA claims pursuant to a theory "enterprise" coverage and "individual" coverage.  See Compl. ¶¶ 20, 22 ("NY Family Bob was, and continues to be, 'enterprise engaged in commerce' within the meaning of FLSA" and "NJ Family Bob was, and continues to be, 'enterprise engaged in commerce' within the meaning of FLSA"); cf. Compl. ¶ 39 (explaining that plaintiff was required to drive from New York to New Jersey to perform work assignments).  In the context of motions for default judgment, courts have found conclusory but uncontested allegations to be sufficient to demonstrate FLSA enterprise coverage.  See Fermin v. Las Delicias Peruanas Rest. Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015); Reyes v. Art Tek Design, Ltd., 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *2 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-cv-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016).

alleges that he "is the owner, officer, director and/or managing agent" of NY Family Bob and NJ Family Bob and participated in the day-to-day operations of both locations and "is an employer pursuant to FLSA" at both locations. <u>See</u> Compl. ¶¶ 14, 18; <u>see also</u> Pl. Aff. ¶¶ 6-8. Plaintiff also testified that Ryu interviewed and hired her and set her schedule and rate of pay. <u>See</u> Tr. at 18; <u>see also</u> Compl. ¶ 19, and, when the New Jersey location opened, directed her to report to work there and to drive several co-workers, <u>see</u> Tr. at 26; <u>see also</u> Compl. ¶ 38 (alleging that plaintiff "was transferred" to the New Jersey location).

The allegations contained in the Complaint thus are sufficient to find that defendants Family Bob Inc., Family Bob Corp, and Ryu were plaintiff's joint "employers" under the FLSA and NYLL. <u>See, e.g.,</u> <u>RSR,</u>172 F.3d at 132 ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case.") (internal quotation marks and citations omitted); <u>Vargas v. Jet Peru-Courier Corp.,</u> No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *5-6 (E.D.N.Y. Mar. 14, 2018), <u>adopted,</u> 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018); <u>Peralta v. M & O Iron Works, Inc.,</u> No. 12-CV-3179 (ARR)(RLM), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

### 4.    Overtime

Plaintiff has sufficiently alleged claims against defendants for unpaid overtime under the FLSA (as well as under the NYLL for Phase I). The pleading avers that she regularly worked in excess of 40 hours each week and that defendants did not pay plaintiff the requisite premium for those overtime hours. <u>See</u> Compl. ¶¶ 29, 39, 40; <u>see also</u> Pl. Aff. ¶ 16.

5.      **Unpaid Wages**

Plaintiff alleges that during Phase III(B), from December 23, 2019 through February 10, 2020, defendants did not pay her any wages at all, prompting her to quit.  See Compl. ¶ 47.  The Complaint does not, however, include a cause of action for unpaid wages (other than unpaid overtime pay).  Nor would such a claim be cognizable under the FLSA: "Unlike the NYLL, which allows plaintiffs to recover their typical hourly rates for unpaid wages claims, the FLSA does not; the FLSA allows employees who are not paid for their labor to recover only the minimum wage for the regular hours they worked."  Aminov, 2017 WL 9511075, at *5 (collecting cases).  Unfortunately for plaintiff, the Complaint herein does not include a cause of action for minimum wages under the FLSA - or, for that matter, under state law - and she thus is not entitled to damages for unpaid minimum wages.  See, e.g., Martir v. Huntington Provisions, CV 19-2412 (DRH)(AYS), 2020 WL 2736696, at *7 (E.D.N.Y. Apr. 29, 2020), adopted, 2020 WL 2735173 (E.D.N.Y. May 26, 2020); Mondragon v. Keff, 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *5 (S.D.N.Y. May 31, 2019), adopted, 2019 WL 2544666 (S.D.N.Y. June 20, 2019); Aminov, 2018 WL 542245, at *2 (ruling that "boilerplate language" in complaints *ad damnum* clause seeking "any such other and further relief this Court deems just and equitable" was insufficient to state claim for unpaid wages).[10]

On the other hand, having pled a claim for violating the FLSA's overtime-pay requirement, plaintiff may recover her unpaid overtime hours "at a rate of no less than one and one-half times the rate of pay for any hours worked in excess of forty per week."  Aminov, 2017 WL 9511075, at *6 (citation and internal quotation mark omitted).

---

[10] Nor does the Complaint include a common law breach of contract claim for unpaid wages.

### 6.   Spread-of-Hours

Plaintiff seeks recovery for spread-of-hours compensation for one hour's pay at the basic minimum hourly wage rate for each day that she worked more than ten hours.  See Compl. ¶ 61 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d)).[11]  As plaintiff failed to allege that she worked more than ten hours consecutively on any day that she worked at the NY Family Bob location, her allegations concerning unpaid spread-of-hours premiums are insufficient to sustain her claim for relief.[12]

### 7.   Wage Theft Prevention Act

Plaintiff sufficiently alleges that defendants failed to provide the wage notice required by the WTPA, section 195(1)(a) of the NYLL.  See Compl. ¶¶ 35, 65; Pl. Aff. ¶ 18.  Additionally, the Complaint sufficiently alleges that defendants failed to provide plaintiff with proper wage statements, in violation of section 195(3) of the NYLL.  See Compl. ¶¶ 37, 70; Pl. Aff. ¶ 20. Therefore, for Phases I(A) and I(B), the period when her employment was based in New York, see supra pp. 2-3, plaintiff has adequately stated claims for violations of the WTPA.  See Vazquez v. 142 Knickerbocker Enter., Corp., 409 F. Supp. 3d 81, 89 (E.D.N.Y. 2018).

### 8.   Tools of the Trade

Citing 29 C.F.R. § 531.35, see Compl. ¶¶ 43, 73, 74, a regulation promulgated under the FLSA, plaintiff alleges that she incurred unreimbursed costs associated with tools of the trade — gas and maintenance of a vehicle she used to shop for groceries for the business, as well as to

---

[11] Unlike the generally applicable spread-of-hours provision, this regulation is not limited to employees earning minimum wage.  Cf. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; Chowdhury v. Hamza Exp. Food Corp., No. 14-CV-150 (JBW), 2015 WL 5541767, at *6 (E.D.N.Y. Aug. 21, 2015), adopted, 2015 WL 5559873 (E.D.N.Y. Sept. 17, 2015), aff'd, 666 F.App'x 59 (2d Cir. 2016); Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC, No. 12-CV-5737 (ILG)(JMA), 2014 WL 4954629, at *5 (E.D.N.Y. Oct. 2, 2014).

[12] As noted earlier, plaintiff – who worked longer hours after her transfer to New Jersey – has not asserted any claims under New Jersey law, which, in any event, does not include a spread-of-hours provision.  See Pierre, 2015 WL 7736552, at *2.

transport staff to work, see id. ¶ 41; Pl. Aff. ¶ 12; Tr. at 14.  Plaintiff states that when she used her car for work from March 1, 2019 until February 10, 2020, she did so at a cost of approximately $78 per week, see Compl. ¶ 41; Pl. Aff. ¶ 12, but that defendants paid her only $910 in total for the use of the vehicle during that time, see Compl. ¶ 41.[13]  The Complaint thereby states a claim under this provision.  See Fan v. Jenny & Richard's Inc., No. 17-CV-6963 (WFK), 2019 WL 1549033, at *8 (E.D.N.Y. Feb. 22, 2019) (gas and maintenance of a vehicle used for food delivery was a tool of the trade), adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); Hui v. Shorty's Seafood Corp., No. 15-CV-7295 (RJD) (ST), 2017 WL 5054401, at *9 (E.D.N.Y. Sept. 6, 2017) (citing cases which deemed claims for similar vehicle-related expenses appropriate), adopted, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017).

Given that plaintiff maintained and fueled her car in order to complete her duties as a kitchen helper, and was not fully reimbursed for those costs, and did not receive the overtime wages to which she was entitled, the Court finds that plaintiff is entitled to reimbursement for the costs of using her car, to the extent pled in the Complaint.

## III.   Damages

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiff's Complaint as to defendants' liability, it need not give the same deference to plaintiff's allegations regarding damages.  Instead, the Court must perform an inquiry to determine the extent of damages to a "reasonable certainty."  Credit Lyonnais Secs., 183 F.3d at 155.

[13]After filing the Complaint, plaintiff claimed that she expended sums for tolls, in addition to the weekly $78 expenditures alleged in her pleading.  Compare Compl. ¶ 41 with Pl. Calc. at 5; Tr. 14.  However, the ultimate award may not exceed the pleading's demand for relief.  See Silge, 510 F.3d at 160; infra p.23 n.19.

17

Under both the FLSA and NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him." Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *9 (E.D.N.Y. Mar. 18, 2016), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016) (quoting Rodriguez v. Queens Convenience Deli Corp., No. 09-cv-1089(KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)). Where, as here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'" Chen, 2016 WL 2909966, at *9 (citation omitted); see Vilchis, 2016 WL 6106478, at *5.

Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate. See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012). Furthermore, "[r]egardless of the evidence submitted, the plaintiff's recovery is limited to the amount and type pleaded in the Complaint." Hernandez v. Delta Deli Mkt. Inc., No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *5 (E.D.N.Y. Feb. 12, 2019) (citing Fed. R. Civ. P. 54(c); Silge, 510 F.3d at 160).

### A.    Wage-and-Hour Claims

Before calculating plaintiff's damages, the Court must address threshold issues concerning the number of hours plaintiff worked per week, plaintiff's hourly rates of pay, and the weeks she worked for defendants.

### 1.    Hours Worked Per Week

Although plaintiff's pleading and hearing testimony are inconsistent as to her schedule and the number of hours worked (she testified to longer workdays), she consistently alleged that she regularly worked well in excess of 40 hours during a workweek for a flat weekly salary. See

Compl. ¶¶ 45, 46; Pl. Aff. ¶¶ 13, 14; Tr. at 7, 18, 19, 20.  This Court relies on the allegations in

plaintiff's Complaint regarding the number of hours plaintiff worked, as she cannot obtain in a

default judgment more than she demanded in her Complaint.  See Silge, 510 F.3d at 160.  In the

Complaint, plaintiff alleges that from May 10, 2018 to February 28, 2019 (Phase I), she worked

56 hours per workweek, see, e.g. Compl. ¶ 29;[14] that from March 1, 2019 through November 30,

2019 (Phase II), plaintiff worked 63.5 hours per week, except for three weeks when she worked

66.6 hours each week), see supra pp. 3-4 & n.5; and that from December 1, 2019 to February 10,

2020 (Phase III), plaintiff worked 57.5 hours per week.

### 2.      Regular Hourly Rate of Pay and Overtime Rate

At the evidentiary hearing, plaintiff testified that in the course of her job interview with

defendant Ryu, he informed her that she was expected to work six days per week, for a total of

52 hours per week, in return for a weekly salary of $650, which would increase after a training

period.  See Tr. at 17-18.  Plaintiff initially was paid $650 per week, a sum that was raised to

$800 after two months of employment.  See id. at 18-19.[15]

For the purposes of the FLSA, "[i]f the employee is employed solely on a weekly salary

basis, the regular hourly rate of pay . . . is computed by dividing the salary by the number of

hours which the salary is intended to compensate."  29 C.F.R. § 778.113(a).[16]  Nevertheless,

---

[14] As previously noted, see supra p. 3 n.2, the Complaint describes 56 hours of work per week during this time period but includes an apparent clerical error, which the Court disregards in its calculations, see Compl. ¶ 29 ("Plaintiff worked forty-six (46) hours per week.").

[15] The Court's damages calculations rely on plaintiff's sworn testimony regarding her $650 starting salary, rather than on the Complaint's apparently overstated allegation that her starting salary was $800.  See Compl. ¶¶ 31, 45.

[16] New York law provides a similar formula for employees who are not paid on an hourly basis.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16; see also Espinoza v. Indus. Glass & Mirror Inc., No. 16-cv-0064 (ARR) (RER), 2016 WL 7650592, at *5 (E.D.N.Y. Nov. 30, 2016).

plaintiff has calculated her hourly rate based on a 40-hour workweek without citing *any* rationale for this approach.[17]  See generally Pl. Calc.; Pl. Mem.

Generally, the determination of the regular rate of pay "must be drawn from what happens under the employment contract."  29 C.F.R. § 778.108.  "In the absence of any written instrument memorializing the parties' intentions, the Court must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record."  Moon, 248 F.Supp.2d at 206.

In this case, plaintiff testified that the parties intended that plaintiff's weekly salary would cover 52 hours of work per week.  See Tr. at 18.  In these circumstances, where the parties understood that the weekly salary would cover more than 40 hours per week, this Court declines to adopt plaintiff's method of calculation.  Instead, the Court calculates plaintiff's regular rate for each week by dividing the fixed rate of pay for that week by 52, the "number of hours which the salary is intended to compensate[,]" 29 C.F.R. § 778.113, as agreed to by the parties at the outset of plaintiff's employment, see Shiu, 2014 WL 652355, at *12 (rejecting plaintiff's calculations based on a 40-hour workweek and calculating restaurant worker plaintiffs' regular hourly rate

---

[17] Where, as here, restaurant workers testified that they understood that their workweek was longer than 40 hours, courts in this District have calculated such an employee's regular hourly rate based on the number of hours the weekly salary was intended to cover.  See Shiu v. New Peking Taste Inc., No. 11-CV-1175 NGG RLM, 2014 WL 652355, at *12 & n.14 (E.D.N.Y. Feb. 19, 2014) (calculating plaintiffs' regular hourly rate based on an agreed-upon 67-hour workweek and rejecting plaintiff's calculations based on a 40-hour workweek); see also Toribio v. Abreu, No. 18-CV-1827 (ARR), 2018 WL 6363925, at *6 (E.D.N.Y. Nov. 15, 2018) (calculating a restaurant worker's regular rate based on a 72-hour workweek), adopted, 2018 WL 6335779 (E.D.N.Y. Dec. 4, 2018).  In such circumstances, courts have not applied N.Y. Comp. Codes R. & Regs. tit. 12, § 145-3.5, a New York regulation (not cited in plaintiff's Memorandum) pursuant to which a restaurant employee's regular hourly rate may be determined by dividing the employee's regular earnings by the lesser of forty hours or the hours actually worked.  Indeed, in Perez v. 50 Food Corp., 17-CV-7837 (AT) (BCM), 2019 WL 7403983, at *7 n.6 (Dec. 4, 2019), adopted, 2020 WL 30344 (S.D.N.Y. Jan 2, 2020), the court, citing Silge, 510 F.3d at 161, opined that it would be unfair to calculate the plaintiffs' NYLL damages based on the aforementioned Hospitality Wage Order, where the defendants, having defaulted, had not been placed on notice of a calculation method that would yield a significantly higher award.  In any event, as previously discussed, the New York regulation is inapplicable to the time period in which plaintiff worked in New Jersey.

based on a 67-hour workweek, as discussed at the time of hiring); Toribio, 2018 WL 6363925, at

*6 (calculating restaurant worker's regular rate based on a 72-hour workweek).

Regarding Phase III(B), the period during which plaintiff received no pay (December 23,

2019 through February 10, 2020), plaintiff is entitled to recover her unpaid overtime hourly rate.

See *supra* p. 15 (citing Aminov, 2017 WL 9511075, at *6).  Here, in the absence of contrary

evidence from defendants, it is reasonable to assume that plaintiff should have been paid the

same weekly salary, $700, as in Phase III(A).  As her hours remained the same as in Phase

III(A), her  unpaid overtime rate for Phase III(B) was likewise $13.46 per hour.  See Aminov,

2017 WL 9511075, at *6.

Plaintiff's rate of pay at various points in her employment is thus calculated as follows:

| Period | Weekly Salary | Weekly Hours | Hourly Pay Rate |
|---|---|---|---|
| Phase I(A): May 1, 2018 – June 25, 2018 | $650 | 56 | $12.50 |
| Phase I(B): June 26, 2018 – Feb. 28, 2019 | $800 | 56 | $15.38 |
| Phase II: March 1, 2019 - Nov. 30, 2019 | $800 | 63.5[18] | $15.38 |
| Phase III(A): Dec. 1, 2019 to Dec. 22, 2019 | $700 | 57.5 | $13.46 |
| Phase III(B): Dec. 23, 2019 – Feb. 10, 2020 | $0 | 57.5 | $13.46 |

### 3.    Total Overtime Compensation

Turning next to the calculation of unpaid overtime, defendants owe plaintiff unpaid

overtime wages under the FLSA (and, for Phase I, the NYLL).  See 29 U.S.C. § 207(a)(1)

(mandating that an employee who works in excess of forty hours per week must be paid for the

excess hours at a premium overtime rate); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2

---

[18] For 3 weeks in Phase II she worked 3 additional hours, on Sundays.

(same).  Under the FLSA and NYLL, the overtime rate adds a fifty-percent premium to the employee's regularly hourly rate.  See 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . .").

Based upon the hours worked and hourly wage rate determined above, see supra Part III.A.1-2, the results of the Court's calculations are as follows:

| Phase | Pay Received per Week | Hours Worked per Week | Hourly Rate [flat rate/ 52] | OT Hours per Week | OT Rate | OT Pay Due Per Week | Wages Owed Per Week | Weeks | Total |
|---|---|---|---|---|---|---|---|---|---|
| Phase I(A) | $650.00 | 56 | $12.50 | 16 | $18.75 | $300.00 | $150.00 | 8 | $1,200.00 |
| Phase I(B) | $800.00 | 56 | $15.38 | 16 | $23.07 | $369.12 | $184.32 | 34 | $6,266.88 |
| Phase II | $800.00 | 63.5 | $15.38 | 23.5 | $23.07 | $542.15 | $357.35 | 36 | $12,864.60 |
| | | 66.5 for 3 weeks | | 26.5 for 3 weeks | | $611.36 for 3 weeks | $426.56 for 3 weeks | 3 | $1,279.68 |
| Phase III(A) | $700.00 | 57.5 | $13.46 | 17.5 | $20.19 | $353.33 | $91.73 | 3 | $275.19 |
| Phase III(B) | 0 | 57.5 | $13.46 | 17.5 | $20.19 | $353.33 | $353.33 | 7 | $2,473.31 |
| | | | | | | | | | $24,359.66 |

### B.      Tools of the Trade

"[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him[.]"  29 C.F.R. § 531.35.  "In this Circuit, [v]ehicles . . . are considered tools of the trade

if employees are required to possess and utilize them in the course of their employment." Hui, 2017 WL 5054401, at *9 (citation omitted); accord Fan, 2019 WL 1549033, at *11.

The Complaint alleges alleges that defendants owe plaintiff sums she expended in using tools of the trade. According to the pleading, in using her car to deliver groceries and co-workers to defendants' New Jersey location, plaintiff incurred expenses of approximately $78 per week (or $3,744 over 49 weeks) for "gas and other costs," but was paid only $910 for the use of her car. See Compl. ¶¶ 41, 74; see also Pl. Aff. ¶ 12. Therefore, plaintiff should be awarded $2,834 for unreimbursed expenses for use of her car.[19]

### C.     Liquidated Damages

Plaintiff requests liquidated damages under the FLSA and NYLL. See Compl. ¶¶ 3, 4, 50, 57; Pl. Mem. at 9; see also Pl. Calc. at 1. Under the FLSA, an employer who violates the overtime compensation requirements is liable for "an additional equal amount as liquidated damages" unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful. 29 U.S.C. §§ 216(b), 260. As a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief. See Peralta, 2014 WL 988835, at *10. Therefore, plaintiff is entitled to an award of liquidated damages under the FLSA.[20]

---

[19] At the evidentiary hearing, plaintiff testified and produced records to show that, in using her vehicle, she paid tolls and related fees, see Tr. at 14-15, and her damages calculations add $563.50 in "Toll Fees" on top of the weekly expenditures of $78 that she alleged in her Complaint, see Pl. Calc. at 5. A default judgment may not, however, "exceed in amount[] what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Thus, plaintiff should not be heard to increase her reimbursable expenses to more than $78 per week for the "gas and other costs" alleged in the Complaint. See Compl. ¶ 41.

[20] The NYLL similarly authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ." N.Y. Lab. Law § 663(1). Liquidated damages under the NYLL are likewise calculated at 100 percent of the unpaid wages due to a prevailing plaintiff. See id. Nevertheless, because "there are no meaningful differences" between the FLSA and the NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

Applying 100 percent liquidated damages as required, the Court recommends awarding plaintiff liquidated damages for unpaid overtime wages under the FLSA in the amount of $24,359.66.  See Fan, 2019 WL 1549033, at *11.

**D.**     **Statutory Damages under the WTPA**

Under the WTPA, plaintiff is entitled to "$50 per workday after February 27, 2015, up to $5,000 for failure to provide a wage notice."  Gil v. Frantzis, 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *10 (E.D.N.Y. Aug. 17, 2018), adopted as modified on other grounds, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018); see N.Y. Lab. Law § 198(1-b).  Moreover, plaintiff is also entitled to "$250 per workday for each workday after February 27, 2015, up to $5,000 for failure to provide a wage statement."  Gil, 2018 WL 4522094, at *10; see N.Y. Lab. Law § 198(1-d).

Here, plaintiff worked for defendants at the New York location beginning May 1, 2018 until February 10, 2019, and never received a proper wage notice or wage statement.  See Compl. ¶¶ 37-38; see also Pl. Aff. ¶¶ 18, 20.  As plaintiff worked at the New York location for over 100 workdays between May 1, 2019 and February 10, 2019, she is entitled to recover the statutory maximum for both the wage notice and the wage statement violations.

Therefore, the Court recommends that the District Court award plaintiff a total of $10,000 from defendants, jointly and severally, for violating the WTPA's wage notice and statement requirements.

**E.**     **Interest**

**1.**     **Prejudgment Interest**

Plaintiff requests prejudgment interest pursuant to New York law.  See Compl. ¶¶ 3, 4; Pl. Mem. at 4-5, 11; see also Pl. Calc. at 1.  "Although it is 'well settled that prejudgment interest is not awardable under FLSA where liquidated damages are awarded, NYLL permits the award

of both liquidated damages and prejudgment interest." Lopez v. Royal Thai Plus, 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *12 (E.D.N.Y. Feb. 6, 2018), (citations and quotations omitted), adopted, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  Prejudgment interest is available for unpaid overtime wages under the NYLL, but not for amounts awarded under the WTPA, see Martinez v. Alimentos Saludables Corp., 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *24 (E.D.N.Y. Sept. 22, 2017), or on liquidated damages, see Fermin, 93 F.Supp.3d at 49.

"There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both FLSA and NYLL." Thomas v. Good Vision Taste Inc., No. 17-CV-6084 (FB)(LB), 2018 WL 4268909, at *7 (E.DN.Y. Apr. 17, 2018) (quotations omitted), adopted as modified on other grounds, 2019 WL 4265868 (E.D.N.Y. Sept. 5, 2018). Courts that have awarded prejudgment interest in such cases have reasoned that plaintiffs "should be permitted to recover under the statute that provides the greatest relief, which in this case is the NYLL." Santana v. Latino Express Rests., Inc., 198 F.Supp.3d 285, 294 (S.D.N.Y. 2016) (citations and quotations omitted); see also Fan, 2019 WL 1549033, at *12.  This Court agrees.

"Under New York law, prejudgment interest is calculated at a rate of 9% per annum." Jiaren Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, at *17 (E.D.N.Y. Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001).  Where "damages were incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." Id. (quotations omitted).  "The midpoint of the relevant period of plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest." Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No.14-CV-5665 (CBA) (RML), 2015 WL 13731362, at *17

(E.D.NY. Aug. 26, 2015).  The date from which to compute prejudgment interest is left to the

discretion of the court.  See Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994);

RKI Constr., LLC v. WDF Inc., No. 14-cv-1803(KAM)(VMS), 2020 WL 6545915, at *22

(E.D.N.Y. Nov. 6, 2020).

The unpaid Phase I wages due to plaintiff under the NYLL total $7,466.88.  The Court, in

exercising its discretion, recommends adopting the midpoint of her employment at the NY

Family Bob location, September 25, 2018, as the proposed interest accrual date.  Therefore, the

Court recommends granting plaintiff prejudgment interest in the amount of a daily rate of $1.84

per day ($7,466.88 x 9% ÷ 365 days), from September 25, 2018 until entry of final judgment.

### 2. Post-Judgment Interest

Plaintiff also requests post-judgment interest.  See Compl. ¶¶ 3, 4; Pl. Mem. at 5, 15.

Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case

recovered in a district court."  Therefore, the Court recommends that plaintiff be awarded post-

judgment interest "to be calculated from the date the Clerk of the Court enters judgment in this

action until the date of payment, at the rate set forth in 28 U.S.C. § 1961."  Sajvin v. Singh Farm

Corp., No. 17-CV-04032, 2018 WL 4214335, at *8 (E.D.N.Y. Aug. 13, 2018), adopted, 2018

WL 4211300 (E.D.N.Y. Sept. 4, 2018).

### F. Attorneys' Fees and Costs

### 1. Applicable Legal Standard

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of

"reasonable" attorneys' fees and costs.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).

Plaintiff bears the burden of proving the reasonableness of the fees sought.  See Savoie v.

Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).  In considering an application for attorneys'

fees, the Court must first determine the presumptively reasonable fee.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).  This presumptively reasonable fee — or lodestar[21] — is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quotations omitted).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion").  The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases.  See Arbor Hill, 522 F.3d at 186 n.3, 190.  In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits.  This is known as the "forum rule."  See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190.  With very limited exceptions, "contemporaneous time records

---

[21] The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate.  See Arbor Hill, 522 F.3d at 183 ("The fee—historically known as the 'lodestar'—to which [ ] attorneys are presumptively entitled is the product of hours worked and an hourly rate.").

are a prerequisite for attorney's fees in this Circuit." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).  The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "'exclude excessive, redundant or otherwise unnecessary hours.'" Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010); see also Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).  "[A] fee award should be based on scrutiny of the unique circumstances of each case . . . ." McDaniel v. Cty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citations and quotations omitted).

In this case, plaintiff seeks $10,995.00 in attorneys' fees for time expended by Diana Seo, Jiajing Fan, Yuezhu Liu, Qinyu Fan, Ge Yan, and Ge Qu.  See Invoice from Hang & Associates, PLLC (Aug. 4, 2020) ("Invoice") at 3, DE #14-9; Pl. Mem. at 15; see also Diana Seo's Affirmation in Support of Motion for Default Judgment (Aug. 4, 2020) ("Seo Aff."), DE 14-2, ¶ 32; Pl. Calc. at 1.

## 2.    Reasonable Hourly Rate

Plaintiff requests an hourly rate of $300 for Diana Seo and Jiajing Fan, as well as for others (with unspecified job titles) who worked on this matter.  See Seo Aff. ¶¶ 38, 39; Pl. Mem. at 14.[22]  "Reasonable hourly rates for wage and hour cases in this District have generally been set at approximately $300.00 to $400.00 for partners and $100.00 to $300.00 for associates." Xu v.

---

[22] Citing cases from the Southern District of New York, plaintiff's memorandum seeks to support an hourly rate of $350 for attorney Jian Hang.  See Pl. Mem at 14.  However, the billing records reflect that Mr. Hang did not perform any work on this case, and the highest hourly rate requested is $300.  See Invoice.

JNP Bus Serv. Inc., No. 16-CV-245 (AMD) (ST), 2018 WL 1525799, at *10 (E.D.N.Y. Feb. 26, 2018) (collecting cases), adopted in part, rejected in part on other grounds, 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018); accord Perez v. Pino Grocery Corp., No. 17-CV-2965 (RRM), 2018 WL 4138935, at *9 (E.D.N.Y. Apr. 16, 2018), adopted, 2018 WL 4119236 (E.D.N.Y. Aug. 29, 2018).

Under the circumstances, a $300 hourly rate for Ms. Seo and Ms. J. Fan is excessive. First, this was an uncontested action with defaulting defendants, not a hotly litigated lawsuit requiring a high level of skill.  See Perez, 2018 WL 4138935, at *8 (reducing the hourly rate of an attorney in a FLSA default case).  Second, both Ms. Seo and Ms. Fan have been practicing in this area of law for less than three years and are relatively inexperienced.  See Seo Aff. ¶¶ 38, 39. Third, and most importantly, plaintiff's submissions contained many careless mistakes.  See, e.g., Compl. ¶ 29 (inconsistent claims of total weekly hours); Seo Aff. (failing to describe the qualifications of most of the individuals who billed time on the case); Pl. Mem. (failing to cite any case law to support the hourly rate calculation).  In this District, an hourly rate of $300 is on the upper end of the range for *senior* associates, and, given the errors and inconsistencies in plaintiff's submissions, the fee award in this case should be based on a reduced hourly rate of $200 for Ms. Seo and Ms. J. Fan, who are junior associates.  See Piedra v. Ecua Rest., Inc., 17CV3316 (PKC) (CLP), 2018 WL 1136039, at *18 (E.D.N.Y. Jan. 31, 2018) (explaining that, within this District, hourly rates of $200 to $300 for senior associates and $100 to $200 for junior associates have been endorsed as reasonable), adopted, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018).

Moreover, despite a series of judicial opinions slashing fee requests relating to the same law firm, Hang & Associates, PLLC ("Hang"), for recurring deficiencies in their applications,

plaintiff has provided no information about four individuals listed on the invoice — Liu, Yan, Qu, and Q. Fan — or their experience level.[23]  Plaintiff requests an hourly rate of $300 for Liu, Qu and Q. Fan, and a rate of $150 per hour for Yan.  See Invoice.  As "no information has been provided as to the experience of the associates who worked on this matter, . . . [this Court, like other jurists in this District,] respectfully recommend[s] that their work be compensated at a rate of $100 per hour."  Chan v. Xifu Food, Inc., 18 CV 5445 (ARR) (RML), 2020 WL 5027861, at *11 (E.D.N.Y. Aug. 5, 2020) (reducing hourly rates of Hang associates/law clerks J. Fan and Liu to $100), adopted, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020); see Li v. Chang Lung Grp. Inc., 16-CV-6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (reducing the hourly rate of Hang associate Kim to $100 for the same reason); Fan, 2019 WL 1549033, at *14 (reducing rates of Hang associates Zhu, Qu, and Liu to $100, for the same reason).

### 3.    Reasonable Number of Hours

Counsel claims that she and her colleagues spent 37.1 hours on this matter and submits contemporaneous time records to substantiate the time charges.  See Invoice at 3. The overall time spent is reasonable.

---

[23] The law firm's website reflects that Ms. Liu is a law clerk, however, it does not list the year she graduated from law school, the status of her bar admission in the United States, or the number of years she has practiced law.  See http://hanglaw.com/professionals/.  Nor does the website provide any information about Ge Yan, Ge Qu, or Qinyu Fan.  See id.

Accordingly, this Court recommends awarding attorney's fees as follows:

| Individual | Hours | Requested Rate | Recommended Rate | Recommended Fees |
|---|---|---|---|---|
| D. Seo | 33.6 | $300 | $200 | $6,720 |
| Q. Fan | .2 | $300 | $100 | $20 |
| G. Yan | .9 | $150 | $100 | $90 |
| J. Fan | 2.0 | $300 | $200 | $400 |
| Y. Liu | .1 | $300 | $100 | $10 |
| G. Qu | .3 | $300 | $100 | $30 |
| **Total** | **37.1** | | | **$7,270** |

Applying the reduced hourly rates to the number of hours reflected in counsel's billing records, the Court recommends awarding attorneys' fees in the amount of $7,270.

**4.    Costs**

Plaintiff further requests $899 for costs incurred in filing fees and effecting service of process.  See Pl. Mem. at 14; Pl. Calc. at 1; see also Plaintiff's Expenses, DE #14-10.  As a general matter, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendants, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), as long as those costs are tied to "[i]dentifiable, out-of-pocket disbursements," see Fan, 2019 WL 1549033, at *15-16 (citation omitted).  Since the costs incurred here are routinely recoverable, the Court recommends awarding plaintiff costs in the amount requested of $899.

**CONCLUSION**

For the foregoing reasons, the Court recommends that plaintiff's motion for default judgment be granted in part, and that plaintiff be awarded the following against defendants, jointly and severally: $69,722.32, representing $24,359.66 in unpaid overtime wages, $24,359.66 in liquidated damages, $2,834  for tools of the trade, $10,000 in WTPA damages, $7,270 in attorneys' fees, and $899 in costs.  The Court also recommends awarding prejudgment interest on $7,466.88, under the NYLL, in an amount to be calculated by the Clerk of the Court by

31

multiplying $1.84 by the number of days from September 25, 2018 until the day the final

judgment is entered, and that the Court award post-judgment interest at the rate set forth in 28

U.S.C. § 1961.

Any objections to the recommendations contained herein must be filed with Judge Eric

Vitaliano on or before February 12, 2021.  Failure to file objections in a timely manner may

waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk of the Court is respectfully requested to docket this opinion into the ECF court

file and to send copies, via Federal Express, to each defendant at the addresses below:

Jihan Ryu
129-09 26th Avenue, Unit 100 Rear
Flushing, NY 11354

Family Bob Inc.
129-09 26th Avenue, Unit 100 Rear
Flushing, New York 11354

Family Bob Corp.
148 Main Street
Little Ferry, NJ 07643


**SO ORDERED.**


**Dated:    Brooklyn, New York**
**January 26, 2021**


 /s/ **_Roanne L. Mann_**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**